**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                                                                          **No. CR 08-1371**

**FERMIN JIMENEZ-MAYA,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Fermin Jimenez-Maya's Motion to Suppress, filed July 8, 2008 [Doc. 54], and the Government's Motion to Bifurcate Hearing on Defendant's Motion to Suppress, filed July 23, 2008. [Doc. 62.] On July 30, 2008, the Court held an evidentiary hearing on Defendant's Motion to Suppress, at which Defendant was present. Defendant was represented by Howard L. Anderson, and the United States was represented by Amanda Gould. Consistent with the Court's ruling at the hearing and the reasons for that ruling given at the time of the hearing, the Court will deny the Defendant's Motion to Dismiss and will grant the Government's Motion to Bifurcate in part and deny it in part.

## I. FACTUAL BACKGROUND

This matter arose after a group of six undocumented aliens was apprehended during a hotel check at the Motel 6 in Deming, New Mexico on January 16, 2008. Several Border Patrol Agents were conducting an immigration inspection at the Motel 6 when they encountered Juan Gabriel Martinez-Jaimes in room 111. The agents determined that Martinez-Jaimes was a citizen of Mexico without the proper permission to be in the United States. Martinez-Jaimes informed them that "Erick" had "taken the rest of the group of aliens" back to Mexico. Martinez-Jaimes was transported to the Deming Border Patrol Station for processing. Several agents remained at the

motel and saw a man drive up to room 111, approach the room, and begin knocking on the door. When the agents approached the individual, he identified himself as Erick Leyva-Cortes and admitted that he was not legally in the United States. The agents then approached the car of which Leyva-Cortes was a recent occupant. They saw what appeared to be bundles of marijuana in the vehicle. The contents of the bundles, weighing 79 kilograms, subsequently tested positive for marijuana. Additionally, the vehicle was occupied by Edgar Garcia-Adame, Angel Inosensio Santos-Gonzalez, Manuel Ivan Cota-Berumen, and Victor Marin-Cruz. Each occupant of the vehicle admitted that they were not legally in the United States, and they too were transported to the Deming Border Patrol Station for processing.

On January 16, 2008, the date of their arrest, Santos-Gonzalez, Garcia-Adame, and Cota-Berumen were mirandized and interviewed by agents. First, Agent Garcia questioned Santos-Gonzalez for more than two hours in an attempt to determine who the marijuana belonged to. At the suppression hearing, Santos-Gonzalez asserted his Fifth Amendment privilege, however, and no evidence was presented with regard to his identification of Defendant by photographic array.

During their interviews with Agent Garcia on January 16, 2008, and at subsequent interviews, Garcia-Adame and Cota-Berumen were shown photographic arrays, some of which contained photographs of Defendant as well as other suspects in the ongoing smuggling investigation. The arrays presented to the witnesses on January 16, 2008 had been prepared before the witnesses were apprehended as part of an ongoing investigation.

Agent Garcia presented the photographic arrays to each witness, using the same procedure each time. A standard admonition accompanying the photographic array, while written in English, was verbally translated into Spanish for the Spanish-speaking witnesses. The admonition provided as follows:

> In a moment I'm going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. Keep in mind that hair styles, bears and mustaches may easily be changed. Also photographs may not always show the true complexion of a person. The person may be lighter or darker than shown in the photo. When you have looked at all the photos, tell me whether or not you see the person who committed the crime. Do not tell the other witnesses that you have or have not identified anyone.

Generally speaking, the witnesses were presented with two sheets containing six photographs each, or twelve photographs total; however, Cota-Berumen may have been presented with only one six-photograph array at a debriefing on June 24, 2008. While the photograph of Defendant -- a photograph taken from his legal permanent resident card -- was distinct from *some* of the other photographs in that it included only his head and not his shoulders, at least one other photograph showed only the suspect's head and not his shoulders. Otherwise, the photographs were similar in that they depicted Hispanic males of roughly similar ages, several of which had mustaches.

On the day of their arrest, Agent Garcia questioned Garcia-Adame for approximately an hour. Garcia-Adame indicated that he met "Juan" in Las Palomas, Mexico and had agreed to carry marijuana into the United States in lieu of paying smuggling fees. Agent Garcia testified that "Juan" was a known alias of Defendant. Garcia-Adame was first shown a six-photograph array that did not contain any suspects, and he was unable to identify anyone in the array. Next, he was shown a second six-photographic array, which included Defendant's photograph as well as the photographs of other suspects in the drug smuggling investigation. Garcia-Adame readily identified Defendant.

At a subsequent interview on February 26, 2008, Garcia-Adame was able to confirm his previous statements. In addition, a court interpreter read him the standard admonition again and he

3

was presented with two six-photograph arrays. With regard to the first array, he was able to identify Defendant's brother, Lorenzo Jimenez-Maya, as well as the person guiding the group, Angel Inocensio. With regard to the second array, he was able to identify both the "assistant guide" and Defendant. He testified that Defendant was the person who had given him the marijuana in Mexico.

On the day of his arrest, January 16, 2008, Cota-Berumen was also shown a photographic array that included Defendant's photograph; however, he told Agent Garcia that he was unable to identify anyone in the array. Later, on June 24, 2008, Cota-Berumen and his attorney requested a debriefing, indicating that Cota-Berumen wanted to talk about "Fermin Jimenez." At the June 24, 2008 debriefing, Cota-Berumen was given the standard admonition along with at least one six-photograph array. He was able to identify Defendant without hesitation. He was also able to identify Angel Inocensio and Lorenzo Jimenez-Maya. Cota-Berumen testified that he failed to initially identify Defendant, not because he did not recognize him, but because he was fearful of testifying against him. Both Garcia-Adame and Cota Berumen testified that they did not feel that the agents were suggesting a certain photograph in the array more than the others. Nor did the agents suggest that they should be able to identify anyone depicted in the array.

## II.  DISCUSSION

### A.  Government's Motion to Bifurcate Hearing on Motion to Suppress.

Given that the two prongs of the relevant inquiry must be "analyzed separately," the Court granted the Government's request to bifurcate the hearing and initially received evidence on only the first prong of the inquiry with the intentions of receiving evidence on the second prong only in the event that the Court determined that the photographic array was impermissibly suggestive. The Court denied the Government's requests to quash subpoenas issued by Defendant with regard to the first prong of the inquiry, as the testimony of the material witnesses was relevant to the

4

suggestiveness of the photographic arrays. Because the Court ultimately determined that the array was not impermissibly suggestive, no continuation of the hearing was necessary to address the second prong of the inquiry.

### B. Defendant's Motion to Suppress Pretrial Identification

A two-pronged inquiry (hereinafter "the Simmons inquiry") is required by the due process clause when an identification procedure is challenged. *Simmons v. United States*, 390 U.S. 377, 384 (1968). First, it must be determined whether the identification procedure was impermissibly suggestive. *Id.* Second, if the procedure was impermissibly suggestive, it must be determined whether the identification was nevertheless reliable in view of the totality of the circumstances. *Id.* The analysis under each prong of the Simmons inquiry is performed separately, and it is necessary to reach the second prong only if the court determines that the procedure was impermissibly suggestive. *Johnston v. Makowski*, 823 F.2d 387, 391 (10th Cir. 1987).

#### 1. Whether Identification was Impermissibly Suggestive

In determining whether a photographic array is impermissibly suggestive, courts consider three factors: the number of photographs included in the array, the manner of its presentation by the officers or agents, and the details of the photographs themselves. *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994).

##### a. Number of Photographs Included

The witnesses were presented with two sheets containing six photographs each, or twelve photographs total, except that Cota-Berumen may have been presented with only one six-photograph array at a debriefing on June 24, 2008. Regardless, a photo array with as few as six photographs is not per se unconstitutional. *Sanchez*, 24 F.3d at 1262; *United States v. Rosa*, 11 F.3d 315, 330 (2d Cir. 1993); *United States v. Smith*, 156 F.3d 1046, 1050 (10th Cir. 1998); *United States v. Bennett*,

409 F.2d 888, 898 (2d Cir. 1969), *cert. denied*, 396 U.S. 852 (1969).  Moreover, the Tenth Circuit has concluded that the number of photographs in an array is not itself a "substantive factor." *Sanchez*, 24 F.3d at 1262.  Instead, it is a factor that affects the weight given to other alleged irregularities or deficiencies in the identification process. *Id.*  Basically, the more photographs used in an array, the less likely that a minor difference, such as background color, will have a prejudicial effect on identification.  *Id.*  Here, the fact that at least some of the arrays at issue may have contained only six photographs does not in itself render the identification process impermissibly suggestive.  However, the Court is cognizant of the fact that it must scrutinize the array and the photographs therein for suggestive irregularities.

At the hearing, Defendant's counsel suggested that because some of the sheets of photographs used in the arrays were not preserved, it left the Court unable to assess the suggestiveness of the arrays in their entirety.  However, the Court finds that the failure to preserve one sheet of the two-sheet photographic arrays, does not impact the suggestiveness of the array, where the sheet did not include photographs that were the subject of any witness identification,.

### b. Manner of Presentation of Array by Agents

Here, a standard admonition was presented to each identifying witness along with the photographic arrays.  Although the admonition was written in English, it was verbally translated into Spanish for the witnesses.  The admonition provided that the "group of photographs may or may not contain a picture of the person who committed the crime."  Further, the witnesses testified that they did not feel pressured or directed to identify a suspect.  Indeed, Cota-Berumen testified that even though he recognized Defendant when he was first presented with a photographic array on the day of his arrest, he did not identify him to the agents until he was debriefed on June 24, 2008.  Further, the witnesses testified that they did not feel that the agents were attempting to suggest one

photograph more than the others.

Under this factor, courts have considered things such as whether the photographs were presented with or without comment as to any irregularities, *Sanchez*, 24 F.3d at 1263, whether the officers knew who the witness might be looking for and somehow attempted draw attention toward that individual, *United States v. Flores*, 149 F.3d 1272, 1279 (10th Cir. 1998), and whether the witnesses were told that a suspect had been arrested or was included in the array. *U.S. v. Wiseman*, 172 F.3d 1196, 1209 (10th Cir. 1999). Finding no evidence that the agents made any comments as to irregularities in the photographs, that they attempted to direct the identifying witnesses to Defendant's photograph, or that they told the witnesses that Defendant's photograph was included in the array, the Court concludes that the manner of presentation weighs in favor of a determination that the identification procedure was not impermissibly suggestive.

### c. Details of Photographs Included in Array

The individuals depicted in photographs within the arrays shared similar physical characteristics. For example, they were all Hispanic males of relatively similar ages, and several of them had mustaches. Defendant complains that his photograph was different from others in that it included only his head and not his shoulders. Upon the Court's review of the arrays, it finds that in fact the photographs of *several* of the individuals included only their heads and not their shoulders. Moreover, the Court regards this a minor irregularity, one that would not "necessarily lead the eye of an unguided viewer" to Defendant's photograph given the similarity of the physical appearance of those depicted in the other photographs. *See Sanchez*, 24 F.3d at 1263.

Defendant also complains that some of the photographic arrays contained pictures of other suspects in the case. However, it is unclear to the Court how this fact renders the array unduly suggestive. Additionally, Defendant asserts that because his brother, Francisco Jimenez-Maya, was

included in some of the photo arrays, confusion resulted.  However, the testimony at the hearing did not support this claim.  Rather, both Garcia-Adame and Cota-Berumen were able to identify both Defendant and his brother in the photographic arrays, although Cota-Berumen did not admit to agents that he could identify them until his debriefing on June 24, 2008.  Moreover, it would seem that including individuals with extremely similar appearances places less emphasis on any one photograph and renders the array less suggestive.  *See U.S. v. Knight*, 2002 WL 31266115, No. 02-6059, at *4 (10th Cir. Oct. 9, 2002) (indicating that the remarkable similarity in appearance of those depicted in the array "bolster[ed] the credibility of the identification, rather than diminishing it").

Having determined that the number of photographs included in the array was not per se unconstitutional and that neither the manner of presentation nor the details of the photographs were unduly suggestive, the Court determines that the identification procedure was not impermissibly suggestive.   As such, the Court need not address the reliability of the identification.

### III.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress, filed July 8, 2008 [Doc. 54], is hereby **DENIED**, and the Government's Motion to Bifurcate Hearing on Defendant's Motion to Suppress, filed July 23, 2008  [Doc. 62],  is hereby **GRANTED IN PART** and **DENIED IN PART**.

Dated this 6th day of August 2008.

_____
UNITED STATES DISTRICT JUDGE